UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CUSTOM UNDERGROUND, INC.,

                              Plaintiff,

v.                                      Case No. 10-CV-222-JPS

MI-TECH SERVICES, INC.,

                              Defendant.                   ORDER

       This diversity action involves a claim for professional negligence in which a contractor, plaintiff Customer Underground, Inc. ("CU") alleges that it sustained damages in reliance on plans and specifications prepared by a designer, defendant Mi-Tech Services, Inc. ("Mi-Tech"). The plans concerned the relocation of an underground cable/conduit package under Interstate 94 and along Grange Avenue in Milwaukee, Wisconsin, in anticipation of future bridge work. Mi-Tech has moved for summary judgment with respect to CU's negligence claim. For the reasons stated below, Mi-Tech's motion for summary judgment will be granted.

## LEGAL STANDARD

       "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Id.* In other words, in determining whether a genuine issue of material fact exists, the court must construe all reasonable inferences in favor of the non-movant. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983). However, where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," there is no genuine dispute as to any material fact because a complete failure of proof "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Where a party fails to address another party's assertion of fact, the court may deem it undisputed for purpose of the motion and may grant summary judgment if the movant is so entitled. Fed. R. Civ. P. 56(e)(2), (3); Civ. L. R. 56(b)(4).

BACKGROUND

The following material facts are undisputed. On May 1, 2008, AT&T hired Mi-Tech to provide designs for an underground cable package near I-94 and Grange Avenue in Milwaukee, Wisconsin, in anticipation of future bridge work and related underground activity. (Def.'s Reply Pl.'s Statement of Facts [PSF] ¶6) (Docket #27). Mi-Tech completed these plans, and, in November of 2008, AT&T retained CU to bore an underground channel for the placement of the utility conduit package underneath I-94 and along Grange Avenue. (*Id.* ¶ 23). AT&T provided CU with the plans and specifications that were created by Mi-Tech, and CU installed the cable package. CU and Mi-Tech never entered into a contract on this project. (*Id.* ¶ 34). In July of 2009, a bridge contractor, who was constructing piles for a new bridge at Grange Avenue, damaged the conduit package. (*Id.* ¶ 29). The plans and specifications prepared by Mi-Tech contained no reference to the placement of these future bridge piles. (*Id.* ¶ 27). As a result of the damage to the conduit package, CU later agreed to rebore and reinstall the package, at no charge to AT&T, but at an alleged cost of approximately $375,000 to CU. (*Id.* ¶ 30).

DISCUSSION

CU claims that Mi-Tech was negligent in preparing the drawings and specifications it used to install the conduit package. Specifically, CU argues that Mi-Tech had a duty to learn of and incorporate into the plans and specifications any planned construction activities that would interfere with or have an impact on the placement of the conduit package — including the new bridge piles. (Compl. ¶ II(G)). Mi-Tech argues that no such duty exists under Wisconsin law, and thus, CU's tort claim must be dismissed. Mi-Tech

asserts that it had no duty to prevent CU from suffering economic losses because Wisconsin does not allow the recovery of purely economic loss in tort unless that loss is combined with damage to the plaintiff's person or property. Because CU's ability to recover turns on whether it may seek purely economic losses in a tort action, the court will first consider this issue.

As a leading treatise notes, "[g]enerally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons or tangible things." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 92, at 657 (5th ed. 1984); *see also* 4 Fowler V. Harper et al., *The Law of Torts* §§ 25.18A to 25.18D (2d ed. 1986) (discussing the general rule that economic damages alone are not compensable in negligence). Moreover, the Seventh Circuit has recognized that Wisconsin allows the recovery of economic loss in tort only when the economic loss is combined with damage to the plaintiff's person or property. *Midwest Knitting Mills, Inc. v. U.S.*, 950 F.2d 1295, 1300 (7th Cir. 1991) (citing *Leadfree Enterprises, Inc. v. United States Steel Corp.,* 711 F.2d 805, 808 (7th Cir. 1983) and *Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329, 1333 (7th Cir. 1985)).

In an attempt to circumvent this principle, the plaintiff argues that this is a case involving the provision of services and, as the Wisconsin Supreme Court has held in *Ins. Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI 139, 668 N.W.2d 462, the economic loss doctrine is inapplicable to claims for the negligent provision of services. However, it would appear that the plaintiff's argument in this regard conflates the economic loss doctrine's applicability in cases where contractual privity exists between the parties with Wisconsin's

principles regarding recovery of economic losses in tort where no contractual privity exists between the parties.

To cure this confusion, it is first necessary to discuss Wisconsin's economic loss doctrine. "The economic loss doctrine seeks to preserve the distinction between contract and tort law and to prevent parties from eschewing agreed-upon contract remedies and seeking broader remedies under tort theory than the contract would have permitted." *Cerabio LLC v. Wright Medical Technology, Inc.*, 410 F.3d 981, 988 (7th Cir. 2005) (citing *Cease Elec. Inc.*, 688 N.W.2d at 467). "Economic loss" for purposes of the doctrine is "the loss in a product's value which occurs because the product is inferior in quality and does not work for the purposes for which it was manufactured and sold." *Cease Elec. Inc.*, 688 N.W.2d at 467. The economic loss doctrine "forbids commercial contracting parties…to escalate their contract dispute into a charge of tortious misrepresentation if they could easily have protected themselves from the misrepresentation of which they now complain." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 866 (7th Cir. 1999) (applying Wisconsin law). In other words, parties cannot use tort principles to circumvent the terms of an agreement. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis.2d 235, 593 N.W.2d 445, 451-52 (1999).

In refusing to extend the economic loss doctrine to services agreements, the *Cease Electric* court's decision did not address situations, such as here, in which no contractual privity exists between the parties. In reaching its conclusion, however, the court did note that it had specifically considered cases in which Wisconsin courts have held that claims for professional malpractice lie both in tort and contract. *Cease Electric*, 688 N.W.2d at 471 (citing *Milwaukee County v. Schmidt, Garden & Erikson,* 43

Wis.2d 445, 453, 168 N.W.2d 559 (1969) (architects); *Smith v. Long*, 178 Wis.2d 797, 803, 505 N.W.2d 429 (Ct.App.1993) (attorneys); and *Milwaukee Partners v. Collins Engineers, Inc.,* 169 Wis.2d 355, 363, 485 N.W.2d 274 (Ct.App.1992) (engineers)). Considering the ramifications of extending the doctrine to services agreements, the *Cease Electric* court noted that "because actions against professionals often involve purely economic loss without personal injury or property damage, the economic loss doctrine could be used to effectively extinguish such causes of action in tort." *Id.* Thus, it would appear that the Wisconsin Supreme Court's holding in *Cease Electric* envisioned allowing plaintiffs to recover purely economic damages in tort actions for professional malpractice, despite the existence of contractual remedies.

Yet, that said, it is ambiguous whether the Wisconsin courts would sustain a tort action in the circumstances of this case. Unlike in *Cease Electric* or the professional malpractice cases it contemplates, this case does not involve a services agreement between the parties. Instead, there is no contractual privity between CU and Mi-Tech. And thus, this court would be recognizing a legal principle – not clearly adopted by the Wisconsin courts – namely that a design professional, in the absence of privity of contract, may be sued by a general contractor on a construction project for purely economic loss resulting from breach of the design professional's common law duty of due professional care.

CU argues that such an extension is warranted, contending that professionals in Wisconsin can be liable in tort for solely economic damages irrespective of whether there is a contractual relationship between the parties. CU points to the Wisconsin Supreme Court's decision in *A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis.2d 479, 214 N.W.2d 764, 765 (1974), as

support for this proposition. However, in *Link Builders,* while there was no contractual privity between the parties, the plaintiffs were seeking remedies for economic losses *and* for property damage allegedly caused by an architect's negligence. *Id.* In that case, the plaintiffs were tenants in a building that the defendant architects had designed, and they argued that the defendants were negligent in drawing their plans because the floors settled, causing damage to the walls and rendering the building untenantable. *Id.* Because the plaintiffs were tenants, they had a property interest in the damaged building, and they were allowed to seek recovery for both economic losses and property damage. *Id.*

By contrast, here, CU has no discernible property interest in the cable package.[1] Instead, as relief, CU seeks damages for labor, materials and services arising from the replacement of the conduit package – in essence, the profits it lost by having to reinstall the package at no charge to AT&T. (Compl. ¶ 11(J)). It alleges no personal injury or property damage because of Mi-Tech's alleged negligence. Rather, its losses are purely economic. Thus, because this court is unable to predict what the Wisconsin courts would do

---

[1] In response to Mi-Tech's motion for summary judgment, CU argues for the first time that it is seeking damages to property in this proceeding. (Pl.'s Resp. Mem. at 5; Pl.'s Resp. Def.'s Proposed Findings of Fact [DPFF] ¶ 33). In support of this assertion, CU notes that it has taken an assignment from AT&T of any claims for physical damage to the conduit bundle. (Pl.'s Resp. DPFF ¶ 33). Regardless of the substantive effect of that assignment on CU's potential claims against Mi-Tech, more significant here, is CU's disregard for the fundamental rule that a plaintiff may not amend its complaint in its response brief. *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (citing *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) and *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984)). Therefore, the court will disregard the plaintiff's untimely allegation that it also seeks damages to property via an assignment of claims from AT&T.

in such a case, and because of the substantial policy considerations involved, the court is hesitant to expand Wisconsin law to allow this tort cause of action for solely economic injury in the total absence of a contractual relationship without a more direct indication of intent by the state courts or legislature. Instead, the court will adhere to the clear dictates of Wisconsin law, as recognized by the Seventh Circuit – that recovery of economic loss in tort is only available when the economic loss is combined with damage to the plaintiff's person or property. *Midwest Knitting Mills, Inc. v. U.S.*, 950 F.2d at 1300. Accordingly, CU's tort cause of action cannot stand and Mi-Tech is entitled to summary judgment on CU's claim for professional negligence.

Therefore,

IT IS ORDERED that defendant's motion for summary judgment (Docket #16) be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED on its merits together with costs as taxed by the clerk of the court.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 20th day of October, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge